**F I L E D**

**PUBLISH**

**JAN 8 2001**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MORRIS H. KULMER and KERN W. SCHUMACHER,

     Petitioners,

v.

SURFACE TRANSPORTATION BOARD and UNITED STATES OF AMERICA,

     Respondents,

and

ROARING FORK RAILROAD HOLDING AUTHORITY,

     Intervenor.

No. 99-9525

---

**ON PETITION FOR REVIEW OF A DECISION OF THE SURFACE TRANSPORTATION BOARD**
**(STB Docket No. AB-547X)**

---

Thomas F. McFarland, Jr., of McFarland & Herman, Chicago, Illinois, for Petitioners.

Marilyn R. Levitt, Attorney, Surface Transportation Board, Washington, D.C. (Henri F. Rush, General Counsel, and Ellen D. Hanson, Deputy General Counsel, Surface Transportation Board, Washington, D.C.; Joel I. Klein, Assistant Attorney General; John J. Powers, III, and Robert J. Wiggers, Attorneys, Department of Justice, Washington, D.C., with her on the brief), for Respondents.

Robert M. Noone, P.C., Glenwood Springs, Colorado, and Charles H. Montange, Seattle, Washington, filed a brief for Intervenor.

---

Before **BRORBY**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

The Surface Transportation Board (STB) dismissed petitioners' offer of financial assistance to intervenor-respondent Roaring Fork Railroad Holding Authority (RFRHA). We exercise jurisdiction under 28 U.S.C. §§ 2321(a) and 2342.

I.

Rail carriers must obtain STB authorization to abandon rail services over their lines. See 49 U.S.C. § 10903(a)(1). RFRHA applied for permission to abandon a 33.44 mile line, known as the Aspen Branch. In pertinent part, the STB granted permission subject to the offer of financial assistance (OFA) provisions of 49 U.S.C. § 10904. The OFA provisions create a four-month waiting period wherein "any person may offer to subsidize or purchase the railroad line that is the subject" of an abandonment application. § 10904(c). If the STB finds that an offer meets certain criteria, the railroad is forced to sell the line to the offeror according to terms negotiated by the parties or, when necessary,

terms imposed by the STB. See § 10904(c)-(f). In the instant case, petitioners filed an OFA to buy the Aspen Branch, apparently hoping to use the tracks for the same purpose—light-rail passenger service—for which RFRHA intended to use them once rail freight service was abandoned. RFRHA moved to dismiss the OFA because the petitioners did not intend to provide continued rail freight service.

In its order, the STB asserted that "when disputed, an offeror must be able to demonstrate that its OFA is for continued rail freight service." Roaring Fork Railroad Holding Authority—Abandonment Exemption—In Garfield, Eagle, and Pitkin Counties, CO, STB Docket No. AB-547X, at 4 (served May 21, 1999) [hereinafter RFRHA decision]. To that end, the STB stated there must be some assurance of sufficient future rail freight traffic "to enable the operator [i.e., the offeror] to fulfill its commitment to provide that service." Id. Petitioners presented evidence of projected rail use, but the STB found the projections "too indefinite and insufficient to support continued freight rail operations, as the offerors readily concede." Id. at 5. Accordingly, it dismissed petitioners' OFA because it appeared unlikely to result in continued rail freight service. Moreover, the STB thought it unjust to use the OFA process to wrest a rail line from one person intending to use it for a legitimate public purpose only to give it to another who wants to put it to the same intended use. See id.

Petitioners claim the STB erred in dismissing their OFA because the OFA provisions do not expressly require the STB to consider rail service continuation as a factor in approving an OFA. They base their argument on the "plain" language of § 10904(d), which provides that rail abandonment may be carried out after the specified waiting period unless the STB "finds that one or more financially responsible persons (including a governmental authority) have offered financial assistance." Petitioners assert that this provision unambiguously evinces Congress' intent to make financial responsibility the sole qualification for OFA approval. However, the Supreme Court has recently stated that "[i]n determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, ___, 120 S. Ct. 1291, 1300 (2000). Rather, a court must read the relevant provisions in context and, insofar as possible, "interpret the statute 'as a symmetrical and coherent regulatory scheme.'" Id., 529 U.S. at ___, 120 S. Ct. at 1301 (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 569 (1995)).

We agree with the Ninth Circuit that § 10904, read as a whole, indicates Congress' intent that the STB may consider the likelihood of continued rail freight service as a factor in approving disputed OFAs. See Redmond-Issaquah

R.R. Preservation Ass'n v. Surface Transp. Bd., 223 F.3d 1057, 1061 (9th Cir. 2000). Most notably, § 10904 itself is entitled "Offers of financial assistance to avoid abandonment and discontinuance." (Emphasis added). Moreover, subsection (b)(1) requires rail carriers pursuing abandonment to provide prospective offerors "an estimate of the annual subsidy and minimum purchase price required to keep the line or portion of the line in operation." (Emphasis added). This provision makes little sense if the continuation-of-service factor plays no part in the OFA process. More fundamentally, we are troubled by the constitutional problems inherent in petitioners' interpretation. It would be difficult indeed to justify a statute that forces a rail carrier desiring to discontinue freight rail service to sell its lines solely because a "financially responsible" person offers to purchase them. Whereas a statute that forces the sale of potentially abandoned lines to "financially responsible" persons who will continue rail service at least furthers a legitimate government interest in preserving access to, and service over, rail lines. See, e.g., § 10101 (outlining Congress' rail transportation policy).

Finding no express support in the text, petitioners look to legislative history for help. They correctly note that the former OFA provisions explicitly stated that before approving an OFA, the ICC (the STB's predecessor) must find that the offeror is financially responsible and "has offered financial assistance to enable

-5-

the rail transportation to be continued." 49 U.S.C. § 10905(d)(1) (1994). The current OFA provisions, as noted, do not contain an express rail-continuation requirement. Petitioners argue that this omission indicates Congress' intent to prohibit the STB from considering continued rail service as a factor. The legislative history, however, fails to explain the import of the omission, although, it does discuss the import of another unrelated, relatively minor change in the OFA process. See H.R. Conf. Rep. 104-422, at 181 (1995), reprinted in 1995 U.S.C.C.A.N. 850, 866. In light of Congress' willingness to explain more modest changes to the very same statute, we agree with the Ninth Circuit that it seems "highly implausible that Congress would eliminate the original aim of the OFA procedure without clearly expressing its intent to do so." Redmond-Issaquah R.R., 223 F.3d at 1062.

In short, while Congress has not specifically required the STB to consider continued rail service as a factor, there is no basis in the statute for concluding that Congress has specifically prohibited the STB from doing so. In the absence of a clear congressional expression on the issue, we must uphold the STB's interpretation of § 10904 so long as the interpretation is "permissible." Brown & Williamson, 529 U.S. at ___, 120 S. Ct. at 1300. For the reasons stated above and in Redmond-Issaquah Railroad, we conclude that it was permissible for the STB to consider whether a disputed OFA was intended for continued rail service.

## III.

Petitioners contend that the STB's order is, nonetheless, arbitrary and capricious under 5 U.S.C. § 706(2) because it fails to explain why they had to demonstrate a <u>sufficient</u> amount of projected rail traffic instead of just <u>any</u> amount of rail traffic in support of their OFA. Under § 706(2)'s arbitrary-and-capricious standard, we will reverse the STB only if there has been a "'clear error of judgment.'" <u>Am. Mining Congress v. Marshall</u>, 671 F.2d 1251, 1255 (10th Cir. 1982) (quoting <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971)); <u>see also</u> <u>Redmond-Issaquah R.R.</u>, 223 F.3d at 1063.

It is true that OFA approval does not require proof of some minimum amount of rail traffic. The ICC (the STB's predecessor) expressed the view that such a requirement "could impose an obstacle to rail service <u>in some cases</u>." <u>Exemption of Rail Line Abandonments or Discontinuance—Offers of Fin. Assistance</u>, 4 I.C.C.2d 164, 167 (1988) (emphasis added). For instance, where there is credible evidence that an OFA would result in continued rail service despite the fact that the service would not be self-sustaining, a minimum traffic requirement would be prohibitive. To illustrate, in <u>Illinois Central R.R. Co.—Abandonment Exemption—in Perry County, IL</u>, ICC Docket No. AB-43 (Sub-No. 164X) (served October 18, 1994) [hereinafter <u>Perry County</u>], the offeror, who owned an inactive coal mine along the rail line in question, wanted

to subsidize the rail carrier to maintain freight rail service although the line was inactive and it was unknown when anyone, including the offeror, would use it in the future. Under the circumstances, the offeror's willingness to subsidize a line from which it could derive no benefit besides potential freight rail service persuaded the STB that the OFA was, in fact, for continued rail service. However, the fact that a minimum traffic requirement for OFAs might hinder continued rail service in "some cases"—such as Perry County—does not mean that such a requirement is inherently inappropriate in all cases, as petitioners seem to contend.

In the instant case, for example, the STB found that the traffic projections of the potential rail users under petitioners' OFA were "too indefinite and insufficient to support continued freight rail operations" and noted that "the offerors acknowledge that continued freight service would not be self-sustaining." RFRHA, at 5. Based on these uncontested facts, the STB concluded that "continued freight rail service would not be likely to result from this OFA proposal." Id. We will not fault the STB for presuming that no one is likely to continue to operate an unprofitable rail service. In the absence of persuasive evidence explaining how and why petitioners would operate the line despite incurring substantial losses, we cannot say the STB was arbitrary in dismissing the OFA.

Petitioners counter that if they acquired the Aspen Branch, they would subsidize freight rail service with profits from potential light-rail passenger service along the line. The STB considered but was not persuaded by this assertion. It noted that Congress had already tentatively earmarked $40,000,000 for RFRHA's own light-rail plans and, should petitioners acquire the line, that funding would be unavailable. See RFRHA, at 6 & n.19. Given the unusual state of affairs, the STB commented that "this case presents the anomalous situation in which any future reinstitution of rail freight service (as an adjunct to passenger service) appears to be more likely under RFRHA's own plans for the future of the right-of-way than through the OFA process." Id. at n.19.

The STB has adequately explained its decision, supported by its uncontested findings. We find no clear error of judgment.

AFFIRMED.

*Kulmer & Schumacher v. Surface Transportation Board*, No. 99-9525

**MURPHY**, Circuit Judge, dissenting.


This case involves the STB's construction of a statute it administers and, thus, this court must first determine "whether Congress has spoken directly to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Because Congress has directly addressed the issue in this case, I respectfully dissent from the majority's conclusion that it is permissible for the STB to consider an offeror's intention to provide continued rail freight service.

Section 10904(d)(1) clearly allows the STB to consider the offeror's financial ability to run the rail line. I also agree that the language of the statute evinces Congress' intent to encourage the continuation of rail freight service along lines that would otherwise be abandoned. *See* 29 U.S.C. § 10904. Under the express language of the statute, however, an offeror is precluded from transferring the rail line or discontinuing rail freight service for a period of two years. *See id.* § 10904(f)(4)(A). This language makes it clear that Congress only requires an offeror to continue rail service for a two-year period. Thus, Congress has precluded the STB from considering the offeror's intentions with respect to the rail line beyond the initial two-year period.

Petitioners have averred that rail freight service will not be discontinued

for the obligatory two-year period and have identified five potential shippers who may have a need for the line. The STB has not made a finding that Petitioners intend to transfer or discontinue service on the line before the end of the second year after the transfer, or that Petitioners are financially unable to provide such service. Thus, Congress' intent as expressed in the statute is served by the OFA filed by Petitioners; the rail line in question will remain available to shippers seeking to run freight for the next two years.

The STB has attempted to supplement the clear and unambiguous language Congress used in § 10904 to fit the unique circumstances presented by this case. There exists, however, a different statutory mechanism by which these unique circumstances could have been addressed. In cases where the rail line is appropriate for public purposes, the party seeking to abandon the line can be exempted from the OFA process. *See* 49 U.S.C. § 10502; *The Central Railroad Company of Indianapolis—Discontinuance of Service Exemption—In Clinton, Howard and Tipton Counties*, STB Docket No. AB-289 (Sub-No. 4X), at 5 (served Jan. 15, 1999). Although RFRHA sought just such an exemption from the OFA process in this case, its request was denied by the STB because RFRHA did not present sufficient information to support the exemption. In its motion to dismiss the OFA, RFRHA requested the STB to reconsider the denial of the exemption. Although the STB indicated in hindsight that "it would have been

-2-

appropriate to exempt this line from the OFA process," it did not specifically grant the exemption or vacate it's earlier decision denying the exemption. *Roaring Fork Railroad Holding Authority—Abandonment Exemption—In Garfield, Eagle, and Pitkin Counties, CO*, STB Docket No. AB-547X, at 6 (served May 21, 1999). RFRHA does not appeal from the STB's denial of the exemption.  The unambiguous statutory language in § 10904 should not be distorted as a means to reach the same ends that could have been reached if the STB had granted RFRHA an exemption from the OFA process.

Because congressional intent can be discerned from the plain language of § 10904, the STB's interpretation is not entitled to any deference.  *See Chevron*, 467 U.S. at 842-43.  I conclude that Congress has expressly foreclosed the STB from considering whether the offeror intends to continue rail service beyond the two-year period expressly stated in the statute.  I, therefore, dissent from the majority's conclusion that the STB has the implied authority to consider the offeror's intentions with respect to the rail line beyond the end of the two-year period.